Thank you very much. And good morning, ladies and gentlemen, and welcome to the appellate court of the state of Illinois. We have one case on the call for today. Is that right, Madam Clerk? And I want to advise the attorneys that you'll be given 10 minutes to argue and five minutes rebuttal, if you'd like. And if we have questions and things moving along, we will not hold you to 10 minutes. So we'll give you plenty of time to get your points across. So what I'd like you to do is when the case is called, if the attorneys would just stand at their places and identify themselves for the record, nice and loud, so we can get it on the tape, and then we'll allow you to proceed, counsel. So will you call the case, please? And, counsels, if you would identify yourselves for the record and who you are. All right, thank you very much. And, Mr. Cook, are you ready to proceed? May I speak to the court, counsel? I would like to focus my argument this morning on issue 3. If time permits, I'll move on to issue 1 as well, but if your honors have any questions about any of the issues we've raised, I'm more than happy to answer them. Mr. Ecko entered a negotiated guilty plea to criminal drug conspiracy predicated on delivery of a controlled substance, and that plea is indistinguishable from the negotiated guilty plea that the only Supreme Court held to be void in Pierre White. Just as there is a single offense of first- degree murder, which has mandatory sentencing enhancements that apply depending on the extent to which a firearm is used during the crime, so is there a single offense of delivery of a controlled substance, which was the object of the criminal drug conspiracy here? And that offense has mandatory sentencing enhancements like murder that depend on the amount of controlled substance that was delivered. The Supreme Court held in White that these types of sentencing enhancements are mandatory with a guilty plea if the factual basis for that plea establishes the facts that trigger the enhancements, even if the parties intended to reach a plea that did not include the enhancement. So just as the factual basis in White established the use of a firearm, the factual basis here, which was the detailed proffer that Mr. Ecko signed as a stipulation, established that the delivery of 100 to 400 grams of cocaine on February 19th of 2001 to a co-defendant named Adam Colton, because the factual basis established a delivery in that amount, which had a mandatory minimum sentence of nine years in prison, the plea agreement that Mr. Ecko entered into for less than that, a sentence of seven years, was void under Pierre White. So your theory is a person who receives less than the minimum has a right to come in and ask to have it vacated and retried under this void nonsense? That's what the owner of the Supreme Court held in Pierre White. Now, what about the notion that one that benefits from an order and assists in having it entered can't be heard to complain about it later on in the appeal? Well, the same thing could be said of the defendant in White. The defendant there agreed to a guilty plea that certainly benefited him, that was less than a minimum, and the defendant was allowed to vacate that plea. And it's not what this district said in the office? That's correct. But I think if we look at what Pierre White said, which is what the owner of the Supreme Court said and what is binding, they didn't apply any sort of estoppel, even though the plea agreement in White did benefit the defendant. And I think the reason they didn't do so is because it's very well subject to procedural bars. A challenge to avoid judgment can't be forfeited and it can be raised at any time, either directly or collaterally, in the trial court or on appeal. There has never been, to my knowledge, any exception for any sort of procedural bar for that, and the White court certainly didn't find one just based on the fact that the defendant benefited in that case from a plea agreement. Well, they discussed it, though, didn't they? They certainly didn't. And that's an issue that is pending before the court in People v. Smith, which, much like People v. Young, was a case that addressed the Pierre White issue and also addressed the retroactivity and also estoppel cases. I understand in the brief in People v. Smith, your office wrote a scathing criticism of the Supreme Court on their void v. voidable analysis. In the Supreme Court brief in Smith? Yeah. I haven't read that brief myself. You should. Very well written. Very well written. Counsel, what involved first-degree murder while this case involves drug conspiracy? Do you see any difference in terms of whether we should think about applying? There's a long line of cases prior to White. Why not apply those instead of White, since we're talking about two different crimes that are really significantly different? But can you comment on that? Well, I believe if you look at the statutes, they're structured very similarly. You have a single statutory provision for first-degree murder. And the court in White relied on that very heavily in finding that when a defendant pleads guilty to that offense, to that statute, as long as the factual basis proves whatever facts necessary for an enhancement within that single offense, that sentencing enhancement is mandatory. Delivery of a controlled substance is the same way. You have a single statutory provision like first-degree murder that establishes delivery of a controlled substance. Within that single offense, you have different gradations of the offense, like first-degree murder, depending on the amount of controlled substance used. And so if we apply the reasoning of White, as long as you have a single offense with gradations, the same thing with delivery of a controlled substance. We have a single offense. We have gradations of that offense. As long as the defendant pleads guilty to that offense and the facts in the factual basis prove a mandatory sentencing enhancement, it has to be applied under pure White. And a plea agreement to lessen that is void. Okay. Well, similar to the question that Justice Hoffman asked you, you know, in plea bargains, there are elements of contract. It's somewhat of a contract. Certainly. So there are principles of contract construction. So what was your answer to whether or not we should just ignore that the defendant received the benefit of his bargain? I mean, that has to be ---- Supreme Court said that basically voidness rules are what control in this situation. And those voidness rules, there is a long line of cases dealing with voidness and guilty pleas. Those cases go back to People v. Wade in 1987 and also People v. O'Ryan v. Roe in 2001. Both of those are cases in the only Supreme Court in which the Court said that a sentence that was imposed as part of a plea agreement, that when that sentence was less than the mandatory minimum for that offense, the plea agreement was void and had to be vacated. So I think the weight of the case law and the line of case law you should be looking at is that. Twenty-five years of consistent precedent finding that guilty pleas in this situation were void. I know this is post-conviction, but after the sentence, there was never any motion at that time. That's correct, Your Honor. So, all right, I just want to be clear about that. That is correct. So to really fast forward, at the time, it seemed fine with the defendant. Now, all of a sudden, on PC, it's ---- Well, at the time, they might have thought it was fine. But even case law at the time in 2005, I just mentioned Wade and Ryan v. Roe, there were also several appellate court cases from the early 2000s holding the exact same thing. So they may have thought what they were doing was fine, but they should have known that under the laws that existed then, even before Pierre White, this wasn't permissible. Counsel, by starting with your third argument here, or third issue, are you suggesting that that's the strongest argument that you have in the case? Well, certainly the law has changed since I filed my opening brief, I don't know, more than a year ago, on the Padilla issues, particularly on the retroactivity of that issue. Also, just given the fact that the Pierre White issue is one that's pending the Illinois Supreme Court, and it's a fairly hot issue right now, I guess to put it is why I put that issue first. Do you want to concede the Padilla issue? No, absolutely not, Your Honor. Well then, tell me, I've got to come to grips with the argument on the question of whether this thing has retroactive application or it doesn't have retroactive application. If it has retroactive application, you want us to depart from Gutierrez and adopt, what is it, Guzman-Ruiz? Well, I think it would be- From the third. If it's a new rule, then it has no retroactive application, therefore you lose the issue. That's correct. So now the question becomes, if the court, the United States Supreme Court, that decided Padilla, later comes down and says it's a new rule, then who are we to suggest that it's not? Well, the U.S. Supreme Court has said that you do have that authority in a state post-conviction proceeding. They held it in Danforth versus Minnesota. Wait a minute. The problem that I have with this is it was the U.S. Supreme Court in Padilla that first gave us the notion that failure to advise a defendant of deportation or immigration consequences constituted ineffective assistance of counsel. Correct. That never existed before. In Illinois, we've got a statute, but we know from the Supreme Court there's no penalty for violating it. So the U.S. Supreme Court gives us this rule, and it's of constitutional dimension, because the right to counsel is a constitutional right or effective assistance of counsel. So they turn around and they say failure to advise is ineffective assistance of counsel, therefore a constitutional deprivation. But we say that that's a new rule from a constitutional standpoint. Now, you're not arguing this case under the Illinois Constitution. You're arguing this case under Strickland, which is a federal constitutional issue, not a state constitutional issue. So why should we interpret this any different than the entity that is the final arbiter in the meaning of the Constitution? Even though it is a federal constitutional right, even before Danforth, it was pretty well established that state courts are free to provide greater protection to a defendant's constitutional rights. State constitution is certainly entitled. We're entitled to give them greater rights. But if the United States Supreme Court says this is what your right is under the federal constitution, what's your best case to say we can say there's greater rights under the U.S. Constitution? Danforth. Danforth says that when you're not offering greater rights, you're just offering a more expansive remedy for a violation of that right when you allow it to proceed in a state collateral proceeding. So you're not changing the nature of the federal constitutional right. You're just offering a greater remedy than would be available to a defendant had he pursued this. But you want us to apply the Gutierrez ruling on the question of new rule versus explanation of an old rule, but deviate from the Gutierrez ruling on the question of whether merely failure to advise equals prejudice or he would have had to make a showing he could have won a trial. So you want half a loaf on Gutierrez and a whole loaf on Guzman-Ruiz. Well, I think Gutierrez was correct in ruling that Padilla did not announce a new rule. I think they were incorrect in their analysis of prejudice, and I think you can Well, I mean, but, you know, I concur to Gutierrez, and my question is, and it's really a base question, who are we to tell the United States Supreme Court that they were wrong when they said it was a new rule? I would just point you back to Danforth. The U.S. Supreme Court said that state courts have the authority. We could give them greater rights, but I can't disagree with a court that hands down a rule as to whether it's new or it's not new. That's not what Danforth said, with respect. Danforth said that state courts have the authority to grant retroactive effect to rules that the U.S. Supreme Court said do not apply retroactively in federal cases. In federal cases. All right. Now, the other question that I have in Guzman-Ruiz, did that court forget that I believe there was no retroactivity issue in Guzman-Ruiz. The defendant's guilty plea and appeals and post-convictions all happened after Padilla was decided, so unlike this case, which definitely was long before Padilla. Counsel, can I ask you, did Padilla even get to the issue of the prejudice prong? It didn't apply. It didn't make a final ruling on whether the defendant had shown prejudice. It remanded to the Kentucky State Court for that determination because it hadn't yet been addressed in the first instance by any other court, but they did give some guidance about what the standard would be for showing prejudice. What they said, they recognized that deportation is often, it is a very severe consequence in many cases for many defendants, and I think Mr. Greco fits that category. But it's not a severe consequence for every defendant, is it? No, but the question, when we're asking prejudice, the question ultimately is whether this defendant, would he have pleaded guilty or not? So we do have to look at the factual circumstances of a particular defendant's case. Right. And what Padilla said is that for some defendants, it may be, avoiding deportation might be far more important than any potential jail sentence. And because of that. But it's not an absolute. Failure to advise relative to deportation is not an absolute then. It depends. Absolutely. You have to look at the facts of each particular case to determine if the defendant was prejudiced. And what they said about that is that the defendant has to show that it would be reasonable under those circumstances to plead not guilty. And I think in a case like this, we have a client who was around the age of 60 when he was deported and released from prison and then deported. He lived in the United States since he was about 13. His entire family, his children, his grandchildren, his wife, and his elderly mother are all in the United States. So he's being separated from his family. He has no family that he knows of in Italy that he's close to. He has fairly serious health problems at his age. Heart problems and some other things. And so he's being taken from his doctor, the support system of his family. This is a very severe consequence. Let me ask you one more question about Padilla. Did it eliminate the collateral versus direct consequences issue? Yes. And how? It eliminated in the sense that before Padilla in Illinois, deportation was considered a collateral consequence, obviously. And because of that, they held in, the Illinois Supreme Court held in Correa that affirmative misadvice about deportation would be deficient performance. But then they said in Huante, silence about deportation would not be. And that was based on the collateral direct distinction. Then the US Supreme Court in Padilla said, that doesn't really matter because deportation is so severe. It doesn't matter if there's affirmative misadvice or just silence on counsel's part. Either way, it's deficient performance. You reported the Sainz-Guzman case running out of the third district that follows the old rule to suggest that this is merely a collateral consequence. The old Delavar opinion was followed in People versus Guzman, a third district opinion, 2014 post-Padilla. And that stands for the proposition that immigration consequences are not by itself equal in effective assistance of counsel. Well, I believe the collateral of this direct, I'm not sure exactly what part of Guzman you're reading. They did rely on the collateral direct in deciding that a trial court's failure to admonish a defendant doesn't automatically render the plea knowing and involuntary. So they relied on the collateral direct in that sense. But Padilla, when we're talking about ineffective assistance rather than the admonishments by the trial court, Padilla clearly held that that distinction doesn't matter for counsel. Regardless of whether it's collateral direct, counsel has a duty to advise the defendant. And when counsel fails to do so, that is deficient performance. And we have that here. We have affidavits that must be presumed to be true in which defendant and his attorney both acknowledge that this was never discussed. Counsel never told him that he would be deported and it is truly mandatory for a crime like this. Counsel, the defendant loses the right to vote when he's convicted of a felony, doesn't he? That's correct. Is that a similar situation? Could this motion be based on that as well? Or this situation, I should say? I would say no, just because that is a serious consequence, losing the right to vote. But it's, I would say, not nearly as severe as being separated from your family and the country you live in for 40 years. Well, that's not the issue. The issue is whether or not you're going to leave this country as a result, and who knows where the family is. That's true. But the consequence of deportation being removed from one country and placed in another is, I believe, far more serious than just losing the right to vote. I don't know if a court would extend Padilla to that situation. But as it stands now, it is deficient performance under the U.S. Supreme Court to not advise. Now, here's a final question. As a practical matter, do you recommend that we delay a decision on this case until the Supreme Court comes down with its decision and settles the issue once and for all and avoid versus avoidable? Since that case is still in the briefing stage, it's probably quite a ways from a decision. Year and a half, two years. Yeah, and I mean, I would expect, regardless of which side wins or loses this case, whoever does lose is probably going to file a- How fast will he be deported if we- He has been deported. Oh, he has been deported? That's correct. And what relief can we give? Well, this is the only conviction on his record that makes him deportable and also inadmissible in the future into the country. So if that conviction is removed from his record, he would be able to come back to the country. That was my question. Practically speaking, can we give you the relief that you're seeking? Yes, I believe- And how? Well, like I just said, if his conviction were vacated under the third issue, then he would be able to come back to the country. And do what? I mean, face the whole thing all over again? Withdraw it guiltily? That's correct. And of course, it's 13 years later, so I think as the state has pointed out, it would be very hard for them to go forward with this because it's 13 years after the fact. So the state would be really compromised in terms of trying to So that would be one thing that you'd be counting on, I'm sure, that maybe they won't try him again because they can't find the people. So practically speaking, if we vacate, if we give you the relief that you're asking for, your client gets to come back from Italy? That's correct, yes. But your position would obviously be if it's void, then the consequences are irrelevant. It's void. That's correct. Period. It doesn't make any difference how difficult it will be for the state. And I would also point out, I mean, if your honors are inclined to create an exception for cases in which the state's ability to prosecute has been compromised, I think the state should at least have to prove in the specific case that they have lost. I'm not suggesting that at all, I'm just asking that question. If it's void, we couldn't create an exception for the state if it's difficult to prosecute. I agree. The consequences are wholly irrelevant if it's void. I mean, the result is what the result is. If there are no further questions, I'll reserve time for rebuttal. Thank you, sir. Thank you very much. And Ms. O'Grady-Kroniak. You want to sit down to do this? Oh, no, I'll sit down. All right, okay. It's okay if you sit down. It's all right. Okay, what else? Good morning, your honors. Once again, Assistant State Attorney Sheila O'Grady-Kroniak on behalf of the people of the state of Illinois. I will address counsel's argument in the order that he raised them here. So, first turning to issue three. This is simply not a Pierre White issue. This case is entirely distinguishable from Pierre White. This guilty plea is not void. The factual basis stipulated to by the parties, the parties stated that it was contained within the charging document. Defendant pled guilty in this case, then, to conspiracy based on the delivery of a controlled substance between the amount of 15 and 100 grams. The factual basis can be separated out from the proffer that was a multiple page document over 40 pages. So, we can pull out that specific delivery between 15 and 100 grams. And there's no Pierre White issue at all. Defendant's guilty plea in this case was entirely proper. It was what all of the parties agreed to after a 402 conference. This is what the state wanted. This is what the defendant wanted. And this is what the trial court agreed to. Let me just interrupt for a minute. It was 123, wasn't it? Total amount of grams. There's several different deliveries and possessions. In this case, there is, since defendant was charged as a co-conspirator, he's also liable for the actions of his co-conspirators. And there is a delivery of, the exact amount is 86.1 grams of cocaine on February 27, 2001, by co-conspirator James Jarvis. So, separating out that factual basis, then, this guilty plea is entirely proper. This court does not even need to reach the issue of whether White applies retroactively by finding that this was an entirely proper guilty plea. The parties amended the indictment. And that's reflected in the trial court's advisements to the defendant. He advised the defendant, you are pleading guilty to conspiracy based on delivery, based on this amount. You face a sentencing range of 6 to 30, 60 on an extended term. And defendant's sentence is within that term and entirely proper. Furthermore, this case, should this court use the White analysis, this case is entirely distinguishable from White. White was a direct appeal from a motion to withdraw a guilty plea. Here, White tried to undo his sentence within a week of pleading guilty. Here, we have a collateral proceeding. Defendant has not raised the issue of whether his sentence was void until on appeal from the dismissal of his post-conviction petition. He doesn't even raise the issue in the petition itself. This court can find under People v. Young, that at this point, given the amount of time that has passed, defendant should be estopped from attempting to rescind his plea where he has already received the benefit of his bargain with the state. That's People v. Young? Correct. It's an estoppel? Correct. Can you use a estoppel against a void order? Yes, absolutely. Can anybody ever be estopped from raising voidness? Yes, absolutely. They were, this court and the Illinois Supreme Court have recognized that alternative remedies can come into play. In Donaldson, the court found that that defendant's sentence could be reconfigured. Even though it was void, it could be reconfigured to better approximate the intent of the parties. This is all under, guilty pleas are contracts. And so under contract law, we can either reform it or we can estop the defendant from rescinding it at this point in the game. Too much time has passed. The defendant is now in Italy. The benefits, or I'm sorry, the burdens that would accrue to the state at this point would make it very difficult to retry this case after this point. And there's been no injury to the defendant. He got exactly what he asked for. He asked for seven years. He got seven years. Well, he would argue his injury is that he was deported and he can't come back. Now, he'll argue that's an injury. He can argue that, but that doesn't mean that he's entitled to withdraw his guilty plea at this stage. Ms. Johnson, how can you say there's no injury to the defendant? There's no... Deportation away from your family with all the multiple health problems and claims he has, you don't think that's an injury? Well, that's what defendant is claiming based on his ineffective assentence of counsel claim and his claim of the trial court. It's not based on his claim that his sentence is void. It's entirely separate. That's the result of him not being advised of the immigration consequences. Not as a result of him receiving the sentence that he asked for. And turning then to defendant's first and second arguments, it's also clear that defendant is not entitled to any relief. Padilla did announce a new rule of law. The United States Supreme Court clarified in Chida's that Padilla does not apply retroactively and under the law at the time it existed, claims of ineffective assentence of counsel based on a failure to advise of immigration consequences were not cognizable. It wasn't a cognizable claim. We also know that the holding in Padilla did not affect the Illinois Supreme Court's holding in DelVillar. Although Padilla decided that there was no distinction between collateral and direct consequences, that was in the context of ineffective assentence of counsel. Padilla never mentions the duties of the trial court in ensuring that a guilty plea is voluntary. We know that that distinction continues to survive after Padilla. We know that DelVillar is still good law. The trial court advised the defendant of the direct consequences of his guilty plea, and so his guilty plea was not involuntary. Now, the level for enhancement is what? How many grams? It goes up at 100 to 400 grams. It becomes a minimum of, I believe, nine years. So now he pleads guilty to between 15 and 100. Correct. That's the agreement. So when you say the enhancement goes from 100 to 400, does that include 100? I believe it starts at like 100.00, so anything above 100 would be. So it has to be above 100. So when he says, I'm pleading guilty to 15 to 100, he, according to the state's position, is not in enhancement territory. Correct. And therefore, the third issue doesn't exist. Exactly. Your opponent's going to tell me. He's going to stand up here and say, well, it says 100 to 400. 100 is included within the enhancement. But the amount here was below 100. The amount was 86. We can separate out from the state and the parties stipulated to the factual basis as contained within the proffer. Contained within the proffer is that amount. It's the 86? Yes. Counsel, let me ask you, the whole, let's assume for a moment the plea was void. Let's assume that for a moment, just for the sake of argument. The argument that you make relative to benefit of the bargain and the whole contractual issue, that's not a unique argument in the law, is it? That's not something that's new. As far as the contract theories applying to the guilty plea. The Oversight and Court recognized that in Donaldson and recognized that the contract principles apply. So no, respectfully, that's not a new or novel argument. It has been recognized even prior to Donaldson. But Donaldson is probably the strongest support for that position. What's your position on the question I asked your opponent as to whether this decision should be delayed until after the Supreme Court finally straightens out the void versus voidable issue in the criminal arena in Illinois? My position is that since factually this case is not governed by white, there's no need for delay. We can resolve it on a factual basis alone and there's no need for. If we were to find it is governed by white, based upon the charging instrument, what then would be the state's argument? Wait or don't wait? I don't really have an answer to that, I'm sorry. All right, that's fair. That's fair. That's fair. I don't think we have an answer either. You've got to admit that. Well, if there are no further questions, then for these reasons and those stated in our brief, we ask that you affirm the trial court's dismissal of defendant's post-conviction petition. Thank you. Also, thank you. Mr. Cook? Just very briefly, Your Honor. First, I'd like to address the applicability of Donaldson. There they held that a plea to, I believe, concurrent sentences could be reconfigured where they were mandatory consecutive by reducing the amounts of the constituent sentences to get an aggregate amount that was still within the bargain reach. There's really no way to reconfigure the plea here in an analogous way to get it above the minimum nine years. But is the analysis the same as Donaldson that we talked about as far as benefit of the bargain, equitable principles, I mean, or contractual principles? Well, in what sense, Your Honor? Well, counsel is arguing the benefit of the bargain. It's like a contract offering acceptance, and now you get the benefit of it. Now you want to renege. I mean, that's – Well, but to, I think, extend Donaldson in that extreme a way would be inconsistent with Pierre White, because just like in Pierre White, the defendant there got the benefit of his bargain, but it was a void bargain, so it's invalid. They were able to reconfigure Donaldson to make that agreement not void but still meeting the bargain. You can't do that here. Is there a difference between the enhancement case? This is not an enhancement case. Is there a difference there? I believe this is an enhancement case. You have enhancements for delivery of a controlled substance for certain amounts, and that's exactly what the factual basis had. There may have been a delivery, like the State said, of something less than 100 grams, but there also in the factual basis was very clearly a delivery involving defendant that was more than that. And as long as that's in the factual basis – Was he sentenced on that? It was – it doesn't matter under Pierre White. It was in the factual basis he pleaded guilty to a charge of delivery of a controlled substance with that – the facts triggering that enhanced sentence in the factual basis. Therefore, it was mandatory. I wanted to say what it is he actually pled guilty to. What did the court say to him? You're pleading guilty to what? Delivery of 15 or more grams but less than 100 is the exact language. And then he said, I plead guilty to that. That's correct. And he was charged with what? The initial charge had, I don't know, maybe a dozen different offenses that were the object of the conspiracy. Okay. Now, you have in your brief the proper details of several drug transactions the defendant was involved in, including the delivery of 7.6 grams of cocaine on February 14th, 123.5 grams on February 19th, along with several other deliveries of unspecified amounts. Right, where nothing was recovered. Now, did he ever actually say, I am pleading guilty to the facts alleged in the proffer? No, but he stipulated to those facts. He signed it. It was treated as a stipulation to all of the facts in the proffer, not just some of them. But he actually – it was actually said he's only pleading guilty to a conspiracy that delivered between 15 and 100. That's no different than Pierre White, where the defendant was trying to plead guilty to a first-degree murder without the firearm enhancement. But as long as the facts establishing that enhancement are in the factual basis, Pierre White held the sentencing enhancement as mandatory. And that's exactly what happened here. Counsel, when they amended the indictment, does that matter? I mean, they amended the indictment to match what he – Well, it's unclear whether they amended it. There's no actual request. The state never requested leave to amend the indictment. It's not amended on the basis of the indictment in writing. The court never granted formal leave to amend. You just have defense counsel making a single comment that Mr. Greco was withdrawing his plea to an amended count on and entering a plea of guilty. That's it. So the indictment was or wasn't amended? I don't believe it was. But even if it had been amended, Pierre White still – it doesn't focus on exactly what the defendant is charged with in the indictment. It focuses on what the factual basis for his guilty plea established. And here, that factual basis established more than 100 grams, which triggered 9 years. We're at this 100, which seems to be a focal point. The judge says 15 to 100. Is the break point 100 or is it over 100? Under the statute, the lower amount is 15 or more but less than 100. And then the next one up is 100 or more but less than 400. So 100 is included within the enhancement. Exactly. So it's greater than or equal to 100 and then less than 100. All right. If you have no further questions, we would ask that this Court either vacate Mr. Greco's guilty plea or remand him. Thank you, Your Honor. Thank you very much for the arguments you offered today. We will advise you. Thank you.